STATE EX REL. LAWRENCE, Petitioner, vs. BURKE, Warden, Respondent.

*June 9—July 1, 1948.*

N. *Paley Phillips,* attorney, and *Irving D. Gaines* of counsel, both of Milwaukee, for the petitioner.

The *Attorney General, Stewart G. Honeck,* deputy attorney general, and *Albert Harriman* of Madison, for the respondent.

FAIRCHILD, J. The referee recognized that there is a fundamental, absolute rule that a defendant in a criminal case shall be informed of the charge against him and of the fact that he is entitled to assistance of counsel. The controlling question, then, is whether the evidence sustains the referee's finding that Paul Lawrence knew or should have known of his right to be represented by counsel and that he intelligently and competently waived his right to be so represented at the time he pleaded guilty.

The referee's findings of fact cover petitioner's history, conduct, career, and intelligence, so far as they are material to this case, from the time of petitioner's birth in 1899, to the time a judgment of conviction was entered against him upon his plea of guilty to two counts in an information. Upon the first count, for statutory rape, he was sentenced to twenty-five years; upon the second, for incest, he was sentenced to an indeterminate term of not less than two years nor more than ten years, said sentences to run consecutively.

The penalty imposed, when considered in the length of years, emphasizes the importance of being sure the defendant knew the nature of the charges and the right to have counsel. We, therefore, give careful consideration to the evidence showing petitioner's experience with courts and officers in criminal and in civil matters and his familiarity with lawyers to whom he might have appealed. One's understanding of his rights may be manifested by a practical demonstration that his ability

and experience has been such that no other conclusion could reasonably be drawn therefrom than that he possessed the necessary information and used his own judgment in deciding upon the course to pursue.

We set forth some of the findings made by the referee which are supported by the evidence proper to be considered under the circumstances of this case:

"3. I further find that the petitioner had extensive experience with criminal court proceedings, lawyers, jails, prisons, issuing of warrants, furnishing bail bonds, securing continuances, issuing search warrants, hiring attorneys, and has had experience with peace officers and parole officers over a period of time from his marriage in March, 1920, down to the time of his trial and conviction in the month of December, 1939. These experiences include the following:

"(a) Because Lola, his fiancee, was a minor about fourteen years of age at the time of his marriage, the petitioner engaged the services of an attorney . . . to procure parental consent to the marriage and a special dispensation from the judge to marry.

"(b) Shortly following the marriage . . . Attorney Robert Cunningham of Janesville was again engaged to represent the wife. This petitioner attended the court, understood the nature 'of the procedure and the success of the attorney in being able to effect a dismissal of whatever the charges may have been.

"(c) . . . the petitioner was arrested in Rock county in April, 1925, for abandonment of his wife, Lola, and three minor children. . . . He was brought back to Janesville and appeared in court a number of times without being represented by an attorney. He demanded a preliminary hearing, which was granted and secured adjournments or continuances of the case from time to time. Later in the proceedings he had the benefit of counsel when Attorney Robert Cunningham again was retained by Paul's mother to defend him. He was familiar with the method of being released from imprisonment upon bail bond. . . .

"(d) In the year 1934, while the petitioner was then living in Lincoln county, Wisconsin, he was arrested for larceny. . . . Petitioner personally retained Attorney George M. Shel-

don of Tomahawk, Wisconsin, to represent him in that case. He consulted with Sheldon and upon the advice of his counsel he entered a plea of guilty and was placed on probation.

"(e) . . . prior to 1938 petitioner hired George M. Sheldon to prepare papers for him to evict a tenant to enable petitioner and family to move into the house occupied by the tenant. . . .

"(f) . . . prior to 1938, . . . petitioner's wife was arrested for assault and battery committed upon a neighbor. This petitioner personally hired Attorney George M. Sheldon to 'defend and keep her out of jail.' Proceedings were had in court on several different days resulting in final dismissal of the case. The petitioner and his wife and Attorney Sheldon were all in court on that case.

"(g) . . . in the month of May, 1938, petitioner consulted Judge VAN HECKE of the county court of Lincoln county concerning the delinquency of his daughter . . . who had run away from home.

"(h) . . . in May, 1938, the petitioner was convicted of larceny. . . . He entered a plea of guilty to the charge in the circuit court of Marathon county before Judge G. LEICHT, circuit judge, who sentenced him from nine months to one year at Waupun, but placed the petitioner on probation. Petitioner was not represented by an attorney at that case. . . .

"(i) . . . on October 8, 1938, the petitioner was charged with the larceny of some groceries . . . and he entered a plea of guilty and was sentenced by Judge VAN HECKE, county judge of Lincoln county, to thirty days in jail, which sentence he served. He was not represented by an attorney. . . .

"(j) . . . on or about November 1, 1938, when the conviction last-above recited came to the attention of Marathon county authorities, the petitioner's probation was revoked and he was committed to the Wisconsin state prison at Waupun where the petitioner served ten months and was released on August 2, 1939. . . .

"(k) I further find that while the petitioner was serving his sentence in the state prison he attended the prison school, learned that other inmates were there serving sentences for taking indecent liberties with minors, knew what 'indecent liberties' meant, learned the difference between 'concurrent'

and 'consecutive' sentences, learned that pardon and parole applications were being drafted by inmates. . . .

"(1) I further find that at the time of petitioner's sentence in December, 1939, which he is now serving, he was well acquainted with Attorney George M. Sheldon of Tomahawk, Wisconsin. He knew the function of an attorney and what services an attorney could perform. He had high regard for the character and integrity of Attorney Sheldon and knew that he could have had the benefit of his legal services and counsel without fee if he so desired. Petitioner also knew Attorneys Frank Hebert of Tomahawk and Francis Golden of Merrill, Wisconsin, and Robert Cunningham of Janesville, Wisconsin.

"4. I further find that petitioner, Paul Lawrence, was arrested on December 4, 1939, upon the complaint of his wife to the district attorney that he had allegedly committed a sexual offense upon his daughter. . . . Petitioner was thereupon formally arrested on December 6, 1939, and was taken before the lower branch of the Lincoln county court for preliminary examination and waived it and was bound over to the upper branch of the Lincoln county court and the same day the information was prepared and the defendant was arraigned thereon before the same judge, in the upper branch of the municipal court, the Hon. MAX VAN HECKE, who presided over both the lower and the upper branches of the county court. Judge VAN HECKE explained the seriousness of the charges to the petitioner prior to the preparation and filing of the information. I find that the petitioner knew the nature of the offenses with which he was charged, and he was informed by the court and knew that the sentence would carry a long prison term.

"5. The record of the proceedings on December 6, 1939, in the lower branch of the municipal court for Lincoln county presided over by Judge VAN HECKE is not complete. The reporter's notes as contained in the transcript . . . do not reflect what happened there and prior to the preliminary hearing. · Judge VAN HECKE explained that the reporter was not present during the first part of the proceedings and petitioner's right to have an attorney if he so desired was fully explained to petitioner at the preliminary hearing; notwithstanding the reporter's notes do not show what was said. Following such

explanation by the court to the accused, the district attorney prepared the information following which the hearing was held in the upper branch upon being bound over. The transcript of what was said upon the trial proper in the upper branch of said court is the only part of the proceedings that was formally reported by the reporter. . . .

"7. I further find that the petitioner herein at the time he was in the custody of the sheriff of Lincoln county, between Monday, December 4, and Wednesday, December 6, 1939, made a written confession to the sheriff of said county. . . ."

Petitioner insists that he had an understanding with some of the officials that the penalty to be imposed would not exceed three or five years. This was denied, and the referee was not impressed with the truth of that statement. Petitioner also insists that the sentences when first imposed on the two separate charges were to run concurrently and not consecutively. These, of course, are matters with which we cannot deal in this proceeding, and we refer to them only as having some bearing with relation to the showing of petitioner's familiarity with proceedings in criminal trials.

There is no record in the reporter's transcript of any statements made by Judge VAN HECKE, the district attorney, or the sheriff to the petitioner to inform him as to his right to have an attorney during the proceedings in the Lincoln county court in December, 1939. However, the testimony of Judge VAN HECKE and the district attorney is that the reporter's transcript did not constitute a full report of what transpired in the proceedings. Although Judge VAN HECKE could not recall any specific statements made when the petitioner appeared before him, he did testify before the referee that it was invariably his practice to tell one charged with a serious offense that he is charged with something that may result in a long prison term, to ask him if he has consulted an attorney, and to inform him that if he wants an attorney he can have one. Reasonable presumptions are to be made in favor of the reg-

ularity and validity of the actions of public officers and tribunals. *Falkner v. Guild* (1860), 10 Wis. *563; *State ex rel. Willis v. Prince* (1878), 45 Wis. 610; *In re Marchant's Estate* (1904), 121 Wis. 526, 99 N. W. 320; 9 Wigmore, Evidence (3d ed.), p. 488, sec. 2534.

The incidents referred to in the referee's finding number three and the testimony of Attorney Sheldon, taken by deposition, leave no doubt as to the correctness of the referee's conclusion that petitioner intelligently and competently waived his right to counsel. *State ex rel. Wenzlaff v. Burke* (1947), 250 Wis. 525, 27 N. W. (2d) 475; *Gryger v. Burke* (1948), 332 U. S. 854, 68 Sup. Ct. 1256, 92 L. Ed. 000. Upon the record not only are the referee's findings of fact supported by the great weight of the credible evidence, but in no particular has the petitioner met the burden of proof as required by the rule in these matters.

The petitioner challenges the sufficiency of the information. He urges that the conviction and sentence amounted to double jeopardy. The petitioner was held to be guilty of rape and of incest. Because of his blood relation to the victim, his act placed him a violator of separate statutes. The doctrine recognized in *Stewart v. State* (1895), 35 Tex. Crim. Rep. 174, 177, 32 S. W. 766, 60 Am. St. Rep. 35, is accepted here. Although the testimony might show that by the same acts he transgressed the law, "yet the offenses are distinct and each requires a different character of proof. The same person might be innocent of the charge of rape while in the same transaction he might be guilty of incest, and an acquittal for the rape does not bar a prosecution for the incest." It is considered that the information was sufficient. *Porath v. State* (1895), 90 Wis. 527, 63 N. W. 1061.

While it is our impression that the sentences imposed upon petitioner might well have been concurrent, that is a matter with which we have no occasion to deal, as in this stage of the

matter it is for executive consideration. The evidence does not show that petitioner is entitled to a writ of *habeas corpus* from this court.

*By the Court.*—Writ denied.

FRITZ, J., dissents.
MARTIN, J., took no part.